UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSH RESIDENTIAL, INC.,<br><br>Plaintiff /<br>Counter-Defendant,<br><br>v.<br><br>PHILADELPHIA INSURANCE COMPANIES,<br><br>Defendant /<br>Counter-Claimant. | CASE NO. C21-5350JLR-DWC<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendant / Counter-Claimant Philadelphia Indemnity Insurance Company's ("Philadelphia"[1]) motion for summary judgment. (Mot. (Dkt. # 30).) Plaintiff / Counter-Defendant Rush Residential, Inc. ("RRI") has not responded to

---

[1] Philadelphia was incorrectly named in this action as "Philadelphia Insurance Companies." (*See* Am. Ans. (Dkt. # 26) at 1.)

ORDER - 1

Philadelphia's motion. (*See* Dkt.) The court has considered the motion, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS Philadelphia's motion for summary judgment.

## II. BACKGROUND

This insurance dispute arises out of Philadelphia's denial of RRI's claim for defense and indemnity related to a state-court employment lawsuit brought by an RRI employee. (*See generally* SAC (Dkt. # 25).) Below, the court discusses the background relevant to Philadelphia's motion.

**A      Relevant Policy Language**

Between 2017 and 2019, Philadelphia issued three separate commercial liability insurance policies to RRI: (1) Policy No. PHSD1219592, effective for the policy period between February 7, 2017, and December 31, 2017 (Hickman Decl. (Dkt. # 31) ¶ 2, Ex. 1 ("2017 Policy") at 12[3]); (2) Policy No. PHSD1296291, effective for the policy period between December 31, 2017, and December 31, 2018 (*id.* ¶ 3, Ex. 2 ("2018 Policy") at 12); and (3) Policy No. PHSD1409464, effective for the policy period between December 31, 2018, and December 1, 2019 (*id.* ¶ 4, Ex. 3 ("2019 Policy") at 33) (together, the "Policies"). Each Policy contains a coverage part for Private Company Protection Plus, which includes Employment Practices Liability Insurance ("EPLI") as Part 2. (*See, e.g.*,

---

[2] Philadelphia has requested oral argument. (*See* Mot. at 1.) The court finds, however, that oral argument would not be helpful to its resolution of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court cites the page number in the CM/ECF header when referring to the exhibits to the Hickman Declaration.

2019 Policy at 50, 52-54.[4]) The Policies' EPLI insuring agreement provided coverage for claims made against RRI and reported to Philadelphia during the Policies' respective policy periods:

**PART 2**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE**

(To be read in conjunction with the Common Policy Definitions, Exclusions, and Conditions Sections, Part 4, 5, 6 below)

I.   INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act**.

(2017 Policy at 27 (emphasis in original); 2018 Policy at 27 (same); 2019 Policy at 52 (same).) The Polices define a "claim" as follows:

**PART 4**
**COMMON POLICY DEFINITIONS**

* * *

B.   **Claim** means:

   1.   a written demand for monetary or non-monetary relief;

   * * *

   against an **Insured** for a **Wrongful Act**, including any appeal therefrom[.]

   * * *

---

[4] The three Policy exhibits contain the same forms and virtually identical language, except that the 2019 Policy exhibit contains some additional forms that are not included in the 2017 and 2018 Policy exhibits. (*See* Mot. at 3 n.1.)

> A **claim** shall be considered made when an **Insured** first receives notice of the **Claim**.

(2017 Policy at 31 (emphasis in original); 2018 Policy at 31 (same); 2019 Policy at 56 (same).) The following language governs requirements for reporting claims:

> **PART 6**
> **COMMON POLICY CONDITIONS**
>
> * * *
>
> IV.   NOTICE/CLAIM REPORTING PROVISIONS
>
> * * *
>
> A.   In the event that a **Claim** is made against the **Insured**, the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice to the **Underwriter** as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such **Claim**, but, not later than 60 days after the expiration date of this Policy, Extension Period, or **Run-Off Policy**, if applicable.
>
> B.   If during this **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this **Policy**, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the Insured arising out of such **Wrongful Act** will be considered made during this **Policy Period**.

(2017 Policy at 39 (emphasis in original); 2018 Policy at 39 (same); 2019 Policy at 64 (same).) Part 5 of the Policies, regarding exclusions, was amended by an endorsement as

ORDER - 4

follows:

**PART 5**
**COMMON POLICY EXCLUSIONS**

The **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insured**:

\* \* \*

    F.    arising out of, based upon or attributable to:

(2017 Policy at 35 (emphasis in original); 2018 Policy at 35 (same); 2019 Policy at 60 (same).)

        1.    any litigation or demand against an **Insured** pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same or essentially the same facts as alleged in such prior litigation; or

        2.    any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other similar policy in which this **Policy** is a renewal or replacement.

(2017 Policy at 45 (emphasis in original); 2018 Policy at 45 (same); 2019 Policy at 70 (same).)

**B.     Factual Background[5]**

On November 9, 2017, attorney J. Roderik Stephens sent a letter to RRI regarding employment-related claims that his client, Beth Cruz, intended to file against RRI. (Hickman Decl. ¶ 5, Ex. 4 ("Stephens Letter").) Mr. Stephens attached to his letter an unfiled complaint in which Ms. Cruz alleged claims against RRI and its officers under

---

[5] Because RRI has not responded to Philadelphia's motion (*see* Dkt.), the court considers Philadelphia's assertions of fact undisputed for the purposes of this motion, Fed. R. Civ. P. 56(e)(2).

Washington state law for failure to pay wages,[6] wrongful termination in violation of public policy, hostile work environment sexual harassment, and retaliation. (*Id.* at 2-16.) RRI alleges that it received the letter and unfiled complaint on November 17, 2017. (SAC ¶ 5.2.)

On May 29, 2018, Ms. Cruz filed in Pierce County Superior Court a revised version of her complaint in which she alleged claims for failure to pay wages, wrongful termination in violation of public policy, hostile work environment sexual harassment, and retaliation arising from conduct beginning in approximately October 2016 and ending with her constructive discharge in October 2017. (SAC ¶ 5.3; Hickman Decl. ¶ 6, Ex. 5 ("Cruz Complaint").) She sought, as remedies, emotional distress damages, back pay, front pay, health care expenses, attorney's fees, and pre- and post-judgment interest. (*See* Cruz Complaint at 13-14.)

RRI tendered Ms. Cruz's employment-related claims to Philadelphia by email on approximately July 27, 2019. (SAC ¶ 5.4; Hickman Decl. ¶ 7, Ex. 6 ("Notice of Claim") (attaching a copy of the November 9, 2017 demand letter and unfiled complaint).) RRI alleges that it also issued a formal tender letter to Philadelphia on August 8, 2019. (*See* SAC ¶ 5.5.[7]) On August 14, 2019, Philadelphia denied RRI's insurance claim because RRI had tendered it after the applicable policy had expired. (SAC ¶ 5.7; Hickman Decl. ¶

---

[6] RRI does not seek coverage in this lawsuit for the portion of Ms. Cruz's claim relating to unpaid wages. (SAC ¶ 5.2.)

[7] Although RRI mentions the formal tender letter in its second amended complaint, that letter is not in the record before the court.

10, Ex. 9 (August 14, 2019 email from Amanda Bozza).)  RRI alleges that it made subsequent demands for coverage, to no avail.  (SAC ¶ 6.1.)

According to RRI, Ms. Cruz's lawsuit was resolved in mediation on November 21, 2019, and the parties entered into a written settlement agreement on November 28, 2019.  (*Id.* ¶ 5.9.)  RRI alleges that it sustained damages resulting from Philadelphia's denial of coverage "in an amount to be established at trial, but, in no event, less than $300,000.00." (*Id.* ¶ 5.10.)

On November 23, 2020, RRI served written notice to Philadelphia and the Washington Insurance Commissioner of its intent to bring an action against Philadelphia pursuant to the Washington Insurance Fair Conduct Act ("IFCA"), ch. 48.30 RCW.  (SAC ¶ 5.11; *see* Hickman Decl. ¶ 11, Ex. 10 (IFCA cover sheet).)

**C.     Procedural Background**

RRI filed its original complaint in this matter in Pierce County Superior Court on May 5, 2021.  (Compl. (Dkt. # 1-1).)  On May 11, 2021, Philadelphia removed the case to this court on the basis of diversity subject matter jurisdiction.  (Not. of Removal (Dkt. # 1).)  RRI amended its complaint on May 17, 2021, and asserted declaratory judgment and breach of contract claims.  (Am. Compl. (Dkt. # 7) ¶¶ 7.1-8.3.)  On May 28, 2021, Philadelphia answered RRI's amended complaint and asserted a counterclaim for a declaration that it does not have a duty to defend or indemnify RRI with respect to Ms. Cruz's underlying claims.  (Ans. (Dkt. # 11) at 7-8.)  RRI did not answer Philadelphia's counterclaim.  (*See generally* Dkt.)

On April 20, 2022, the parties stipulated to allow RRI to further amend its complaint. (Stip. (Dkt. # 23); 4/22/22 Order (Dkt. # 24).) In its second amended complaint, RRI added new claims for violations of the duty of good faith, the IFCA, and the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW. (SAC ¶¶ 9.1-11.5.) In its answer, Philadelphia amended its declaratory judgment counterclaim to seek declarations that it did not breach its contract with RRI and did not violate the duty of good faith, the IFCA, and the WCPA. (Am. Ans. (Dkt. # 26) at 9-10.) RRI again did not answer Philadelphia's amended counterclaim. (*See generally* Dkt.)

On April 4, 2023, the parties filed a stipulated motion to continue the trial date and pretrial deadlines to allow time for them to engage in efforts to resolve the matter and conduct discovery. (4/4/23 Mot. (Dkt. # 27).) The court granted the motion; continued the parties' bench trial from October 2, 2023, to March 4, 2024; and reset all unexpired pretrial deadlines in accordance with the new trial date. (4/5/23 Order (Dkt. # 28); *see also* 4/6/23 Sched. Order (Dkt. # 29).)

Philadelphia filed this motion for summary judgment on August 10, 2023. (Mot.) RRI did not file a timely response. (*See generally* Dkt.) On September 1, 2023—the original noting date for the motion—RRI filed an unopposed motion to continue the briefing schedule by approximately four weeks because its attorney was moving between law firms and did not see that the summary judgment motion had been filed. (1st Mot. to Continue (Dkt. # 34).) The court granted that motion. (9/5/23 Order (Dkt. # 35).) The parties subsequently agreed to—and the court approved—a second extension of the briefing schedule that set the deadline for RRI's response on September 27, 2023, and

Philadelphia's reply on October 6, 2023. (9/20/23 Order (Dkt. # 37).) Neither party, however, filed any additional briefing regarding Philadelphia's motion for summary judgment. (*See* Dkt.)

### III.   ANALYSIS

Philadelphia asserts that it has no duty to defend or indemnify RRI because RRI failed to give Philadelphia timely notice of Ms. Cruz's claims. The court agrees. Below, the court sets forth the relevant legal standards and then analyzes Philadelphia's motion for summary judgment.

**A.   Legal Standards**

Three sets of legal standards apply here: the summary judgment standard, the rules for interpreting insurance contracts, and the rules for determining when an insurer has a duty to defend or indemnify the insured. The court discusses each in turn.

<u>1.   Summary Judgment</u>

Under Federal Rule of Civil Procedure 56, either "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit

1 under the governing law." *Id.*

2     The moving party bears the initial burden of showing that there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323.  If the moving party meets this burden, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Id.* at 324; *Anderson*, 477 U.S. at 250.  Where, as here, the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("If there is a failure to respond, [Rule 56] 'authorizes the court to consider a fact as undisputed.'" (citing Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment)).  Nevertheless, the court must still "assess whether 'the motion and supporting materials' entitle the movant to summary judgment." *Heinemann*, 731 F.3d at 917 (quoting Fed. R. Civ. P. 56(e)(3)); *see* Local Rules W.D. Wash. LCR 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

   2.   Interpretation of Insurance Contracts

   The court construes an insurance policy as a contract, and the interpretation of that contract is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141-42 (Wash. 1984).  Policies must be construed as a whole and the terms within "given a 'fair, reasonable, and sensible construction as would be given to the contract by

the average person purchasing insurance.'" *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000) (quoting *Am. Nat'l Fire Ins. Co. v. BL Trucking Constr. Co.*, 951 P.2d 250, 256 (Wash. 1998)).  The court is bound by the definitions provided in the policy. *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 198 P.3d 514, 517 (Wash. Ct. App. 2008) (citing *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 326 (Wash. 2002)).  Undefined terms in a policy are interpreted by courts based on their ordinary meaning or common law definitions.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990).  Where the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists.  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).  A clause is ambiguous only if it is susceptible to two or more reasonable interpretations, and ambiguities are resolved in favor of the insured. *Id*.

The insured has the initial burden to show the insurance policy covers its loss. *Overton*, 38 P.3d at 329 (citing *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003-04 (Wash. 1992)).  If the insured meets this burden, the insurer must prove that specific policy language excludes the insured's loss.  *Id*.  Exclusionary clauses, however, "are to be most strictly construed against the insurer." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 697 (Wash. 2010) (quoting *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983)).

### 3. Duties to Defend and Indemnify

An insurer has a duty to defend "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the

policy's coverage." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002)). An insurer's duty to defend is based on "the *potential for liability*," and is triggered if the policy "*conceivably covers* the allegations in the complaint." *Id*. (emphasis in original) (internal citations omitted). In Washington, an insurer's "duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014). When an insurer has no duty to defend a claim against an insured, the insurer's failure to defend does not constitute bad faith. *United Servs. Auto. Ass'n v. Speed*, 317 P.3d 532, 542 (Wash. Ct. App. 2014). Thus, "[w]hen an insurer correctly denies a duty to defend, there can be no bad faith claim based on that denial." *Id.* (citing *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 285 P.3d 892, 899 (Wash. Ct. App. 2012)).

The insurer's duty to indemnify the insured is narrower than its duty to defend: it "hinges on the insured's *actual liability* to the claimant and *actual coverage* under the policy." *Woo*, 164 P.3d at 459 (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000)) (emphasis in original). Thus, if there is no duty to defend, then there is no duty to indemnify. *Id.*

**B.     Philadelphia's Motion for Summary Judgment**

Philadelphia argues that coverage for Ms. Cruz's claim against RRI is barred because RRI failed to give Philadelphia notice of the claim during the relevant policy period. The court agrees.

The Policies define a "**claim**" to mean "a written demand for monetary or non-monetary relief . . . against an **Insured** for a **Wrongful Act**" and provide that a "**claim** shall be considered made when an **Insured** first receives notice of the **Claim**." (2017 Policy at 31; 2018 Policy at 31; 2019 Policy at 56.) The Policies require the insured to "give written notice to the **Underwriter** as soon as practicable after [certain officers of the insured] first become aware of the **claim**," but no later than 60 days after the Policy's expiration date. (2017 Policy at 39; 2018 Policy at 39; 2019 Policy at 64.)

In this case, Mr. Stephens sent RRI a demand letter and draft complaint on behalf of Ms. Cruz in November 2017. (Stephens Letter (dated November 9, 2017); *see* SAC ¶ 5.2 (alleging that Ms. Cruz "made claims against RRI" on November 17, 2017).) Thus, RRI received notice of Ms. Cruz's claim while the 2017 Policy was in effect. (*See* 2017 Policy at 12 (stating that policy was in effect from February 2, 2017, through December 31, 2017).) As a result, RRI was required to provide written notice of the claim "not later than 60 days after the expiration date of" the 2017 Policy. (*Id.* at 39.) RRI, however, did not report Ms. Cruz's claim to Philadelphia until approximately July 27, 2019, long after the reporting deadline. (*See* Notice of Claim at 1; *see also* SAC ¶ 5.4 (alleging that RRI provided notice to Philadelphia of "Cruz's complaint and the litigation" on July 27, 2019).) Therefore, RRI's notice of Ms. Cruz's claim was untimely and Philadelphia had no duty to defend or indemnify RRI against that claim.

Philadelphia makes several arguments in anticipation of what RRI might have argued had it responded to the motion for summary judgment. (*See* Mot. at 9-14.) The court agrees with Philadelphia that none of those potential arguments support denial of

the motion for summary judgment.  First, Philadelphia posits that RRI would have argued that the court should apply the "notice/prejudice rule," which requires insurers to show actual prejudice when denying coverage based on the lack of timely notice.  (*Id.* at 9-10.)  The Washington Court of Appeals, however, has held that the notice/prejudice rule does not apply to claims-made policies like the ones at issue in this case.  *See Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 35 (Wash. Ct. App. 1989) (noting that because claims-made policies "require notice be given during the policy period itself," allowing an extension of the reporting deadline "in effect rewrites the contract between the two parties" (quoting *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512, 515-16 (Fla. 1983))); *see also Westport Ins. Corp. v. Markham Grp. Inc. PS*, 403 F. App'x 264, 265-66 (9th Cir. 2010) ("We are satisfied that the Washington Supreme Court would agree with [*Gannon's*] reasoning.").  Therefore, the court declines to apply the notice/prejudice rule to the Policies at issue in this action.

Second, Philadelphia anticipates that RRI would have argued that the Policies' "Prior and Pending" exclusion "acts to extend the coverage period of each Policy back to the Prior and Pending Date in Item 5 of the Declarations."  (Mot. at 10-11.)  This exclusion excludes coverage for "any litigation or demand against an **Insured** pending on or before the respective Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same or essentially the same facts as alleged in such prior litigation."  (2019 Policy at 70.)  For all three Policies, the Prior and Pending Date is February 7, 2017.  (*See* 2017 Policy at 12; 2018 Policy at 12; 2019 Policy at 33.)  The court agrees with Philadelphia that the Prior and Pending exclusion is just that:  an exclusion that bars

coverage for "any litigation or demand pending on or before February 7, 2017, or any litigation or demand concerning essentially the same facts as alleged in any prior litigation or demand." (Mot. at 11); *see Faithlife Corp. v. Phila. Indem. Ins. Co.*, No. C18-1679RSL, 2020 WL 7385722, at *5 (W.D. Wash. Dec. 16, 2020) (interpreting similar policy language and holding that "[t]he language does *not* ensure that every claim arising after [the Prior and Pending Date] will be covered." (emphasis in original)).

Finally, the court agrees with Philadelphia that the Washington Supreme Court's recent decision in *Preferred Contractors Insurance Company, Risk Retention Group, LLC v. Baker & Son Construction Inc.*, 514 P.3d 1230, 1232 (Wash. 2022), does not apply to the Policies at issue here. *Preferred Contractors* involved purported claims-made commercial liability policies that provided coverage only for losses that both occurred and were reported to the insurer during the one-year policy period; the policies did not provide any retroactive coverage for losses that occurred during one policy period and were reported in a subsequent policy period. *Id.* at 1236. The court held that the policies at issue in that case created "limited one-year windows for claims to occur and be reported to qualify for coverage" and that "[s]uch restrictive coverage violates Washington's public policy." *Id.* at 1237. Here, by contrast, the Policies at issue require only that the insured report the loss no later than 60 days after the expiration of the policy period in which the insured received notice that the loss occurred—even if the loss occurred during an earlier policy period. (*See, e.g.*, 2017 Policy at 39.) Such claims-made policies "generally do not violate public policy," *Preferred Contractors*, 514 P.2d at 1237 (citing *Gannon*, 774 P.2d at 36), and the court sees no reason to hold

otherwise in this case.

In sum, the court concludes that Philadelphia has met its burden to show, as a matter of law, that the Policies do not provide coverage for Ms. Cruz's employment claim because RRI failed to timely report that claim to Philadelphia. Furthermore, because Philadelphia had no duty to defend or indemnify RRI for Ms. Cruz's claim, its denial of coverage was not in bad faith and did not violate the IFCA. *Speed*, 317 P.3d at 542-43; *see* RCW 48.30.015 (providing a cause of action to "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer"). And because there is no genuine issue of material fact regarding whether Philadelphia engaged in an unfair or deceptive act or practice when it denied RRI's request for coverage, Philadelphia's conduct did not violate the WCPA. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986) (stating that the elements of a WCPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) injury to the plaintiff's business or property, and (5) causation); RCW 19.86.020. Therefore, the court GRANTS Philadelphia's motion for summary judgment and DISMISSES RRI's claims against Philadelphia with prejudice.

In light of these holdings, the court ORDERS the parties to show cause why the court should not also grant summary judgment in Philadelphia's favor on its declaratory judgment counterclaim. (*See* Am. Ans. at 9-10 (seeking a declaration that Philadelphia (1) has no duty to defend or indemnify RRI with respect to Ms. Cruz's claims and (2) has not breached its contract with RRI, breached the duty of good faith, violated the IFCA, or

violated the WCPA)); Fed. R. Civ. P. 56(f)(3) (empowering the court to consider summary judgment on its own after giving notice and a reasonable time to respond).

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Philadelphia's motion for summary judgment and DISMISSES RRI's claims against Philadelphia with prejudice. (Dkt. # 30). The parties are ORDERED to show cause by no later than **October 27, 2023**, why the court should not also grant summary judgment in Philadelphia's favor on its declaratory judgment claim.

Dated this 17th day of October, 2023.

JAMES L. ROBART
United States District Judge